UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

George L. Terry,

    Plaintiff,

        v.

                              Case No. 1:12cv393

Patrick R. Donahoe,                         Judge Michael R. Barrett
Postmaster General,
United States Postal Service,

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant Patrick R. Donahoe, Postmaster General's Motion for Summary Judgment. (Doc. 9). Plaintiff George Terry has filed a Response (Doc. 10) and Defendant has filed a Reply (Doc. 11).

**I.    BACKGROUND**

Plaintiff was born in 1950. While serving as a Marine in Vietnam, Plaintiff sustained shrapnel wounds which caused him to have a speech impediment. (Doc. 9-1, George Terry Dep. at 10-11). In 1979, Plaintiff became employed with the United States Postal Service ("USPS") and worked at the Cincinnati Bulk Mail Center ("CBMC"). Plaintiff also became a member of the National Postal Mail Handlers' Union.

On September 8, 2006, Plaintiff was standing near the desk of his supervisor, Anthony Keith Norris. William Ashley, an acting supervisor, and another employee named Carl Tuck were also there. Tuck made a comment suggesting that Ashley smelled as if he had been smoking marijuana. Ashley responded that he smelled like

that when he was sexually aroused by Tuck. (Id. at 28-32). Even though this exchange did not involve Plaintiff, Plaintiff claimed that the comments made by Ashley were upsetting to him due to their sexual nature. (Id. at 32). Tuck and Ashley were disciplined as a result of these comments. (Doc. 9-2, EEOC Hearing (excerpts) Tr. 241-42). Tuck filed an EEO Complaint against Ashley for sexual harassment, but it was dismissed at the administrative level. (Terry Dep. at 73-75).

In November of 2006, Plaintiff reported to Norris that an employee named Richard Godfrey, who is African-American, was threatened by another employee, Mark Ingram. (Id. at 35-40). According to Plaintiff, Ingram bragged about shooting deer with a shotgun and made racially hostile comments by using the term "buck" in a way that it could refer to both a male deer and an African-American male. (Id.) Plaintiff also claimed that Ingram warned Godfrey that when a shotgun is aimed at a target, individuals standing near the target may also get hit with shotgun pellets. (Id.) According to Plaintiff, this was a warning to Godfrey that he should not associate himself with Plaintiff. (Id.)

At Plaintiff's request, Norris contacted the Postal Inspection Service's Inspector Mark Lakes to investigate the Ingram's threats. (Doc. 9-1, at 40; Doc. 9-2, Tr. 236). Lakes conducted interviews of Plaintiff and the other employees. (Doc. 9-2, Tr. 294-96). Godfrey denied that he felt threatened. (Doc. 9-1, at 43-46). Lakes concluded that there was no credible threat. (Doc. 9-2, Tr. at 296). Following the investigation, Norris determined that Plaintiff had created hostile work environment based on the accusations. (Doc. 9-1, at 40). On November 17, 2006, Norris issued Plaintiff a "seven day no time off suspension." (Id. at 41).[1] The suspension did not result in a loss of time or pay. (Id.)

---

[1] Plaintiff had previously received a letter of warning for improper conduct. The

2

On December 1, 2006, Norris disciplined Plaintiff again, claiming that Plaintiff came up close to him, began shouting at him and jabbing his finger at him. (Doc. 9-1, at 42). Plaintiff was given a fourteen day suspension. (Id.) However, it appears from the record that Plaintiff never served any time off as a result of this discipline.

In December of 2006, Plaintiff grieved both suspensions. On January 10, 2007, the grievance was resolved. (Doc. 9-1, at 44). The 7-day and 14-day suspensions were modified into one seven day "no time off" suspension. (Id.)

On February 2, 2007, Plaintiff filed his first EEO Complaint. (Id. at 45). Plaintiff claimed sex, age, and disability discrimination based on the following allegations:

> Wm. Ashley sexually assaulted co-worker Carl Tuck. I reported this to Keith Norris, and wrote a statement. Within two days Ashley was showing my statement to my co-workers. I complained to Norris about continued harassment and I was given 7-day paper suspension, then I was given a 14-day suspension (now reduced to letter of warning). All of this stems from sexual harassment and retaliation of me because management was protecting Ashley.

(Id.)

On March 22, 2007, Norris disciplined Plaintiff for a third time. The events which led to this discipline occurred on March 12, 2007, when Plaintiff was given an assignment working on the "dumpers," which are the machines that move mail. (Terry Dep. at 49-50). Norris claims that Plaintiff left his assignment and went to another area. (Doc. 9-1, at 46). As a result, Norris imposed another fourteen day suspension upon Plaintiff. (Id.)

Plaintiff amended his EEO Complaint to include the fourteen day suspension, claiming that the discipline was based on disability discrimination and retaliation. (Doc.

---

suspension was the next step in the progressive discipline schedule used by the Postal Service.

3

9-1, at 48).

Plaintiff also grieved the fourteen day suspension. October 1, 2007, the grievance was settled and the fourteen day suspension was reduced to a seven day suspension. (Doc. 9-1, at 51). However, settlement provided that the suspension would be expunged from Plaintiff's file on November 23, 2007 as long as it was not cited in any subsequent discipline. (Id.) There is no evidence that Plaintiff ever served any time off as a result of this suspension. (Doc. 9-2, Tr. 273).

Plaintiff then filed another grievance over overtime. Plaintiff claimed that he was denied overtime due to the deliberate manipulation of the overtime system. On June 21, 2007, the grievance was settled and Plaintiff was granted ten hours of overtime. (Doc. 9-1, at 52). The settlement provided that "[i]f he is not offered this make-up he will be compensated as if he had worked the overtime." (Id.) However, Plaintiff claims that he did not get the ten hours because they were offered to him during a time when he was on planned annual leave. (Terry Dep. at 109-114).

In September of 2007, Plaintiff filed his second EEO Complaint which was based on the denial of overtime. (Doc. 9-1, at 53). Plaintiff's complaint was based on sex, age, disability and retaliation for filing his earlier EEO Complaint. (Id.) Plaintiff alleged:

> I am on overtime desired list. Management has manipulated the overtime assignments so I am excluded from off-day overtime and sometimes same-day overtime.

(Id.)

Plaintiff's two EEO Complaints were consolidated for a hearing before Administrative Law Judge David Treeter. The hearing was held on December 4, 2008 and included testimony from Plaintiff, Norris, Godfrey and other employees. (Doc. 9-2).

4

At the hearing, Norris testified that the overtime system in place at the CBMC at the time Plaintiff filed his EEO Complaint was imperfect and could lead to unfairness. (Doc. 9-2, Tr. 256). To illustrate, Norris explained that if Plaintiff's off day was Thursday and he was fifth on the list for overtime on Wednesday, but management only needed four workers, he would not get overtime on Wednesday, but if overtime was then needed on Thursday, he would be skipped because he was not there. (Tr. 254-58). In addition, if a person worked two hours at the end of an eight hour shift, he might not be eligible to work overtime if he was off the next day because the next person on the list would be chosen. (Tr. 254-58). However, Norris denied that he manipulated the overtime lists to exclude Plaintiff. Norris also testified that two other individuals, both with more seniority than Plaintiff and with the same off-day schedules as Plaintiff, had less overtime than Plaintiff did for the period at issue. (Tr. 258-262). Norris also testified that the overtime system was changed so that there are now three overtime lists to alleviate the previous problems. (Id.)

Judge Treeter found that Plaintiff was not disabled within the meaning of the Rehabilitation Act. Judge Treeter also found that Plaintiff was unable to rebut the nondiscriminatory reasons given for the USPS actions. Plaintiff appealed this decision administratively and the decision of ALJ Treeter was upheld.

In his Complaint, Plaintiff brings claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA") and Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* (Doc. 1).

5

## II.     ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B.  Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]."  42 U.S.C. § 2000e–3(a).

In his Complaint, Plaintiff claims discrimination based on sex and retaliation based on the filing of his first EEO Complaint.

#### 1.  Sex discrimination

Plaintiff has not set forth any direct evidence of sex discrimination.  Where no

6

direct evidence of discrimination exists, a claim of employment discrimination is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *DiCarlo*, 358 F.3d at 415. In reverse discrimination cases—such as this one—where the plaintiff is the member of a majority group, the plaintiff need not show under the first prong that he is member of a protected class, but instead he must "prove 'background circumstances [to] support the suspicion that the defendant is the unusual employer who discriminates against the majority.'" *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). Similarly, to satisfy the fourth prong, the plaintiff must show that the defendant treated similarly-situated female employees differently. *Id.*

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Burdine*, 450 U.S. at 254-56. If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802.

The plaintiff may prove pretext by showing either that: (1) the proffered reason had

7

no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

Plaintiff has not identified any background circumstances indicating that Defendant is the unusual employer who discriminates against the majority. Plaintiff also has not demonstrated that he was treated differently than similarly-situated female employees. In response to Defendant's Motion for Summary Judgment, Plaintiff's sole reference to his sex discrimination claim is that:

> Mr. Ashley was making sexual references of a homosexual nature. Supervisor Norris accused Mr. Terry of having an affair with Wanda McGowand. The trier of fact should also be given the opportunity to hear about sexual discrimination.

(Doc. 10, at 6).

To the extent that this argument attempts to set forth a hostile work environment claim, that claim fails. As the Supreme Court has explained, both an objective and subjective test must be met to establish a hostile work environment:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). "[S]imple teasing, offhand

comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). While Plaintiff may have been offended by the two comments he has identified, these two comments do not rise to the level of conduct which establishes a hostile work environment.

Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of discrimination under Title VII.

### 2. Retaliation

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate by a preponderance of the evidence that (1) the plaintiff engaged in a protected activity under Title VII, (2) the plaintiff's protected activity was known to the defendant, (3) the defendant took adverse employment actions against the plaintiff, and (4) there was a causal connection between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). The Supreme Court has recently explained that with regards to the fourth element: "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

Plaintiff has not established that Defendant took an adverse employment action against him. For an employment action to become actionable retaliation "[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a

9

reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted).

The only discipline issued to Plaintiff after he filed his first EEO Complaint was the fourteen day suspension which was reduced to a seven day suspension and was to be expunged from his file. There is no evidence that Plaintiff suffered a loss of pay because of the suspension, or ever even served the suspension. The Sixth Circuit has held that suspension with pay is not an adverse employment action. *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999).

Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of retaliation under Title VII.

### C.  ADEA

Plaintiff has not raised any arguments in his response to Defendant's Motion for Summary Judgment regarding age discrimination. The Court considers this claim abandoned. *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (affirming trial court's finding that party's failure to properly respond to the arguments raised in a motion for summary judgment constituted an abandonment of those claims).

### D.  Rehabilitation Act

Plaintiff has not raised any arguments in his response to Defendant's Motion for Summary Judgment regarding disability discrimination. Therefore, the Court considers this claim abandoned.

### III.  CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 9) is **GRANTED**. This matter shall be **CLOSED** and **TERMINATED** from the docket of this

Court.

**IT IS SO ORDERED.**

              */s/ Michael R. Barrett*
              Michael R. Barrett
              United States District Judge